## Richmond

LONNIE LEE TRIPLETT V. COMMONWEALTH OF VIRGINIA.

January 17, 1972.

Record No. 7812.

Present, All the Justices.

*John W. Parsons* (*L. R. Campbell*, on brief), for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Lonnie Lee Triplett (defendant or Triplett), who waived a jury trial, was convicted by the trial court of a felony, operating a motor vehicle in violation of Code § 46.1-387.8 of the Virginia Habitual

Offenders Act[1], and sentenced to a term of one year in the state penitentiary.

Triplett did not waive a preliminary hearing and one was not afforded him. He was tried by the court on a warrant. No indictment or presentment had been returned by the grand jury against Triplett and he had not waived indictment in writing.

The primary question here is whether a defendant, who has not waived such requirements and duly objects, can be put on trial for this violation where he has not received a preliminary hearing after his arrest and has not been presented or indicted by a grand jury.

The Attorney General argues that neither a preliminary hearing nor an indictment was required to place the defendant on trial because of Code § 46.1-387.8 which provides, in part:

\* \* \*

"For the purpose of enforcing this section, in any case in which the accused is charged with driving a motor vehicle while his license, permit or privilege to drive is suspended or revoked or is charged with driving without a license, the court before hearing such charge shall determine whether such person has been held an habitual offender and by reason of such holding is barred from operating a motor vehicle on the highways of this State. If the court determines the accused has been so held, it shall certify the case to the court of record of its jurisdiction for trial."

This argument overlooks, however, the clear mandate of both Code § 19.1-163.1[2], which sets forth when a preliminary hearing is required, and Code § 19.1-162[3], which requires an indictment or presentment or a written waiver thereof before a person shall be put on trial for a felony.

It is true that the requirement for a preliminary hearing under Code § 19.1-163.1 is not jurisdictional and constitutionally imposed but is only statutory and procedural. *Webb* v. *Commonwealth*, 204

---

[1] Code §§ 46.1-387.1 to 46.1-38.12 inclusive.

[2] Code § 19.1-163.1 provides:

"No person who is arrested on a charge of felony shall be denied a preliminary hearing upon the question of whether there is reasonable ground to believe that he committed the offense, and no indictment shall be returned in a court of record against such person prior to such hearing unless such hearing is waived in writing."

[3] Code § 19.1-162 provides, in part:

". . . no person shall be put upon trial for any felony, unless an indictment or presentment shall have first been found or made by a grand jury . . . unless such person, by writing . . . , shall have waived such indictment or presentment . . . ."

Va. 24, 129 S.E.2d 22 (1963). Likewise, the requirement for indictment is not jurisdictional and constitutionally imposed but is only statutory and procedural. *Henson* v. *Commonwealth*, 208 Va. 120, 155 S.E.2d 346 (1967), *Forester* v. *Commonwealth*, 210 Va. 764, 173 S.E.2d 851 (1970).

But where, as here, the defendant insists upon his statutory rights to a preliminary hearing and indictment, we hold the failure of the trial court to adhere to those procedural requirements is reversible error.

Two other questions raised by the defendant require a brief recitation of some of the facts established by the evidence.

Triplett was arrested by a police officer who observed him drive his motor vehicle for a short distance along a secondary road and enter the driveway of his residence. The vehicle which the defendant was operating was a regular model half-ton pickup truck equipped with "oversize tires with heavy treads" on the rear wheels. A trailer hitch of the type used to pull farm machinery and equipment was affixed to the rear of the truck. No license plates were displayed on the vehicle and the words "Farm Use" were painted on each side of it.[4]

The defendant, whose testimony in this respect was uncontraverted, testified that the truck was used exclusively for "farm purposes" which included "feeding cattle," "drawing and pulling logs for firewood and pulling a farm trailer and machinery." Prior to his arrest the defendant had driven the truck from his residence to another location on his farm approximately ¼ mile away where he fed his cattle. He was returning to his residence at the time of his arrest.

Defendant first argues that it was not unlawful for him to operate a "farm use" vehicle since the operator of such a vehicle is not required to have an operator's or chauffeur's license.[5] This argument must fail, however, because the defendant, in July, 1969, had been adjudged an "habitual offender" under the Virginia Habitual Offenders Act.[6] The order declaring him an habitual offender prohibited him from operating any motor vehicle on the highways of the

---

[4] Certain vehicles generally referred to as "farm use" vehicles are exempt from annual registration and licensing by law. Code § 46.1-45.

[5] Code § 46.1-352 provides, in part:

"No person shall be required to obtain an operator's or chauffeur's license for the purpose of driving or operating a . . . vehicle defined in section 46.1-45 . . . on the highways."

[6] See n.1, *supra.*

state[7] and no license to operate a motor vehicle could be issued to him for a least ten years.[8] The single exemption from this prohibition is found in Code § 46.1-387.8 which provides ". . . the order shall not operate to prevent or prohibit such person from operating a farm tractor upon the highways when it is necessary to move such tractor from one tract of land used for agricultural purposes to another tract of land used for the same purposes, provided that the distance between the said tracts of land shall not exceed five miles. . . ."

The defendant's final contention is that the trial court erred in not holding the vehicle he was driving to be a "farm tractor" within the meaning of the exemption set forth above.

The General Assembly, in Code § 46.1-1 (7), has defined a farm tractor as "Every motor vehicle *designed* and *used primarily* as a farm, agricultural or horticultural implement for drawing plows, mowing machines and other farm, agricultural or horticultural machinery and implements." (emphasis supplied)

In *Smith* v. *Commonwealth*, 190 Va. 10, 55 S.E.2d 427 (1949), a case not cited by either of the parties, we held that "designed" meant " 'intended'—to be used by the accused for that purpose." However, the use of that definition was required there by the context in which it appeared in the statute, namely "adapted and designed." As we pointed out in *Smith*, when an instrumentality is spoken of as "designed," this can refer to the purpose for which it was planned or constructed.

In defining "farm tractor" the General Assembly has seen fit to require two criteria, namely that the vehicle be both "designed" and "used primarily" for the enumerated purposes. In this context we hold that the word "designed" takes on the more limited meaning set forth in *Smith*, that is, "planned or constructed" for the purpose of drawing plows, mowing machines or other farm, agricultural or horticultural machinery and implements.

The vehicle driven by Triplett was an ordinary pickup truck, it was not planned or constructed for the enumerated purposes. It was, therefore, not a farm tractor within the meaning of the exemption established under Code § 46.1-387.8.

The conviction is reversed and the case is remanded.

*Reversed and remanded.*

[7] *See Code* § 46.1-387.6.
[8] Code § 46.1-387.7.